IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIMOTHY J. SMITH, as Executor of the
ESTATE OF JOE KEMP SMITH, and JANE
SMITH,

    Plaintiffs,

v.

FIRST HORIZON CORPORATION and FIRST
HORIZON BANK,
    Defendants.

Civil Action No.
1:22-cv-04228-SDG

**OPINION AND ORDER**

This matter is before the Court on two motions to dismiss—one by Defendant First Horizon Bank [ECF 7] and one by Defendant First Horizon Corporation [ECF 9]. For the following reasons, the Court **GRANTS** First Horizon Bank's motion and **DENIES as moot** First Horizon Corporation's motion.

**I.   Background**

    **A.   Factual Allegations**

The Court accepts the following facts as true for purposes of this motion.[1] In 2007, the now-deceased Joe Kemp Smith obtained a $2,018,23.50 loan from

---

[1] *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

Patriot Bank of Georgia ("Patriot Bank") [2] and secured the loan with two tracts of land owned by his company, Smith Industries, Inc.[3] When the loan matured in 2009, Mr. Smith renewed the loan and modified the terms of the deed to secure debt.[4] Patriot Bank subsequently failed, went into receivership with the Federal Deposit Insurance Corporation ("FDIC"), and then was sold to Georgia Commerce Bank ("GCB") on September 2, 2011.[5] Mr. Smith was not making payments on the note, so he entered into default in November 2011.[6]  In January 2012, GCB filed a collection lawsuit ("the 2012 Lawsuit") in the Superior Court of Forsyth County against Mr. Smith for his failure to repay the loan.[7] In March 2012, GCB and

---

[2] ECF 1-5, at 2.

[3] ECF 1, ¶ 73.

[4] *Id.* ¶¶ 74–76.

[5] Judicially noticeable FDIC records show that GCB purchased Patriot Bank in September 2011. FDIC, *Failed Bank Information for Patriot Bank of Georgia, Cumming, GA*, https://www.fdic.gov/ (search "Industry Analysis," choose "failed banks," click "failed bank list," search "Patriot Bank of Georgia," and follow the hyperlink) (Dec. 30, 2020). The Court notes this because "public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. Sec. & Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006).

[6] ECF 1, ¶ 84; ECF 1-9.

[7] ECF 1, ¶ 18.

Mr. Smith jointly moved for entry of a Consent Judgment against Mr. Smith.[8] The Superior Court subsequently granted the joint motion, entered the Consent Judgment against Mr. Smith in the amount of $2,212,067.72, and issued a Writ of Fieri Facias.[9]

In December 2018, Mr. Smith and his wife (Jane Smith) filed a lawsuit ("the 2018 Lawsuit") in the Superior Court of Forsyth County, Georgia, attacking the validity of the Consent Judgment.[10] The 2018 Lawsuit was premised on a legal theory that the Superior Court lacked subject matter jurisdiction over the 2012 Lawsuit.[11] Then-Plaintiffs sought a judicial declaration that the Consent Judgment was void, an injunction on collection efforts, an accounting, and damages for breach of contract and various torts attributed to the "void" judgment.[12] In February 2020, the Superior Court entered an order dismissing every claim

---

[8] ECF 7-3, at 2–3. This exhibit is attached to First Horizon Bank's motion to dismiss, which the Court can consider because it is "central to the plaintiff's claim" and its "authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

[9] ECF 7-3, at 6–7.

[10] ECF 1, ¶ 46; ECF 7-4.

[11] ECF 7-4.

[12] *Id.* The tort claims included fraud, intentional infliction of emotional distress, and loss of consortium. *Id.* at 9–10.

premised on the jurisdictional arguments.[13] In December 2020, the Superior Court denied then-Plaintiffs' motion for reconsideration.[14] This left the breach of contract claim pending,[15] but then-Plaintiffs voluntarily dismissed the 2018 Lawsuit in April 2022.[16]

### B.   Procedural History

On October 24, 2022, Plaintiffs Timothy Smith, as Executor of the Estate of Joe Smith, and Ms. Smith filed this lawsuit against Defendants First Horizon Corporation ("FHC") and First Horizon Bank ("FHB").[17] Plaintiffs styled the action as a renewal complaint of the 2018 Lawsuit.[18] On November 23, FHB moved

---

[13]  *Id.* at 6–7. "The Court finds that the 2007 and 2009 Loans were properly transferred to [GCB] on September 2, 2011. Thus, any counts in Plaintiffs' Second Amended and Restated Complaint that are based upon the contention that the Consent Judgment [ . . . is] void and invalid (or that pursuit of them is wrongful because they are void and invalid) should be dismissed." *Id.*

[14]  ECF 7-5.

[15]  ECF 7-4.

[16]  ECF 1, ¶ 48. Mr. Smith passed away on January 4, 2021, so Mr. Smith's son, Timothy Smith, as Executor of the Estate, was substituted in the place of his father.

[17]  In 2014, GCB merged with and into IBERIABANK. Then, in 2020, IBERIABANK merged with and into FHB, making FHB the beneficiary of the Consent Judgment. *Id.* ¶¶ 54–56.

[18]  *Id.* at 1.

to dismiss the Complaint for lack of subject matter jurisdiction.[19] Plaintiffs failed to timely respond to the motion in accordance with Local Rule 7.1.(B), NDGa. On December 23, FHC joined FHB's motion to dismiss for lack of subject matter jurisdiction, and, in the alternative, moved to dismiss for failure to state a claim upon which relief could be granted.[20] After filing an emergency motion for extension of time,[21] which the Court granted, Plaintiffs responded on January 31, 2023 opposing FHC's motion.[22] Defendants timely replied on February 13.[23]

## II.     Legal Standard

A complaint should be dismissed under Rule 12(b)(1) only where the Court lacks jurisdiction over the subject matter of the dispute. Attacks on subject matter jurisdiction may be based on a facial or factual challenge to the complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981)). A

---

[19]   ECF 7.

[20]   ECF 9.

[21]   ECF 10.

[22]   ECF 11. While Plaintiffs' emergency motion only requested an extension of time to respond to the FHC motion, their response opposes arguments made in both the FHC and FHB motions. *Id.* Because FHC joined FHB's motion, the Court still considers Plaintiffs' subject matter jurisdiction arguments.

[23]   ECF 12.

facial attack "requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and for purposes of the motion, the plaintiff's allegations in the complaint are taken as true. *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)) (alterations omitted). To the contrary, a factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits are considered." *Id.* (quoting *Lawrence*, 919 F.2d at 1529). Under a factual attack, the presumption of truthfulness does not attach to the plaintiff's allegations. *Lawrence*, 919 F.2d at 1529. The attack in this case is facial, not factual.

### III.  Discussion

Plaintiffs allege eight causes of action, all of which arise under Georgia state law, and six of which are identical to the claims dismissed in the 2018 Lawsuit. Count I seeks a declaratory judgment concerning the validity of the 2012 judgment.[24] Count II asserts a claim for a preliminary and permanent injunction against Defendants' collection efforts.[25] Count III asserts a claim for fraud.[26] Count

---

24  ECF 1, ¶¶ 177–84.

25  *Id.* ¶¶ 185–91.

26  *Id.* ¶¶ 192–208.

IV asserts a claim under Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-41-1.[27] Count V asserts a claim for intentional infliction of emotional distress.[28] Count VI demands an accounting through discovery.[29] Count VII, brought by Ms. Smith, asserts a claim for loss of consortium.[30] Finally, Ms. Smith brings Count VIII for the wrongful death of Mr. Smith.[31] The RICO and wrongful death claims, Counts IV and VIII respectively, were not asserted in the 2018 Lawsuit; all other claims were considered and accordingly dismissed by the Superior Court.[32]

### A. The *Rooker-Feldman* doctrine bars Plaintiffs' claims.

This case presents a quintessential *Rooker-Feldman* scenario. Under the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over an action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp.*

---

[27] *Id.* ¶¶ 209–46.

[28] *Id.* ¶¶ 247–56.

[29] *Id.* ¶¶ 257–62.

[30] *Id.* ¶¶ 263–67.

[31] *Id.* ¶¶ 268–72.

[32] ECF 7-4.

*v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The essence of the *Rooker-Feldman* doctrine is that a 'United States District Court has no authority to review final judgments of a state court in judicial proceedings,'" and that "[r]eview of such judgments may be had only in [the United States Supreme Court]." *Narey v. Dean*, 32 F.3d 1521, 1524 (11th Cir. 1994) (second alteration in the original) (quoting *Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 482 (1983)); *see also Scott v. Frankel*, 606 F. App'x 529, 531 (11th Cir. 2015) (per curiam) (citations omitted) (noting that the *Rooker-Feldman* doctrine "arises from the fact that the only federal court empowered to review final state court judgments is the Supreme Court of the United States").

"*Rooker-Feldman* bars not only cases seeking direct review of state court judgments; it also bars cases that are 'inextricably intertwined' with a prior state court judgment." *Bisbee v. McCarty*, 3 F. App'x 819, 822 (10th Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16); *see also Cavero v. One W. Bank FSB*, 617 F. App'x 928, 930 (11th Cir. 2015) (per curiam) ("*Rooker-Feldman* applies 'both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment.'") (quoting *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam)). "A claim filed in federal court is inextricably intertwined with a state court judgment if it would 'effectively nullify' the state court judgment or if it

'succeeds only to the extent that the state court wrongly decided the issues.'" *Cavero*, 617 F. App'x at 930 (citation omitted).

Plaintiffs explicitly ask this Court to determine the "validity, enforceability, and legal effect" of the 2012 Lawsuit and resulting Consent Judgment.[33] In other words, they are asking this Court to review the Superior Court's judgment—in clear violation of the *Rooker-Feldman* doctrine. Precisely to this issue, the Eleventh Circuit has held that the *Rooker-Feldman* doctrine is properly applied where, as here, plaintiffs "request[ ] the district court to declare a final state court judgment void." *Hirschhorn v. Ross*, 250 F. App'x 916, 916 (11th Cir. 2007) (per curiam). That is because declaring a state judgment void is no different than reviewing that judgment in an appellate posture not available to federal district courts. *Scott*, 606 F. App'x at 531. Ultimately, this Court lacks the authority to review the final judgment rendered in the 2012 Lawsuit. And while Plaintiffs do not so explicitly ask this Court to determine the validity of the 2018 Lawsuit but instead fashion their Complaint as a renewal of the 2018 Complaint, for reasons stated below, this Court still lacks authority under *Rooker-Feldman* to review the final judgment rendered in the 2018 Lawsuit.

---

33   ECF 1, ¶ 181.

Further, because Counts II-VIII are inextricably intertwined with the Consent Judgment, this Court lacks authority to consider any of the remaining claims in this case. *Cavero*, 617 F. App'x at 930. Counts II-VIII are all premised on Plaintiffs' runaway theory that Defendants obtained and enforced a "void" Consent Judgment. This Court cannot grant any form of relief to Counts II-VIII that does not "effectively nullify" the Consent Judgment by directly or indirectly declaring it void. *Id*. Granting an injunction on Defendants' enforcement and collection of the Consent Judgment necessarily requires finding the judgment is void or was wrongly decided. Finding for Plaintiffs on any of their tort claims—fraud, RICO, intentional infliction of emotional distress, loss of consortium, or wrongful death, all premised on the theory that Defendants obtained and enforced a "void" judgment—is impossible without finding the Consent Judgment void. *Valentine v. BAC Home Loans Servicing, L.P.*, 635 F. App'x 753, 757 (11th Cir. 2015) ("Finally, the only way to vindicate the Valentines' claims—all of which allege that the state court litigation turned on fraudulent evidence—is to hold that the state court wrongly decided the foreclosure matter by relying on fraudulent evidence. The district court was thus correct in concluding that *Rooker-Feldman* barred post-judgment relief here."). And to the extent that an "accounting through discovery" is a cognizable claim, Plaintiffs' claim requires an assumption of wrongdoing in

collecting on the judgment, which would, again, only be possible if the Consent Judgment is void. *Cf. Williams v. Tritt*, 262 Ga. 173, 174 (1992) ("Because there is some evidence of [wrongdoing], the trial court did not err in granting an accounting."). Alas, the *Rooker-Feldman* doctrine bars all claims in this case.

### B. Plaintiffs' attempts to circumvent *Rooker-Feldman*'s jurisdictional bar are meritless.

Plaintiffs attempt to escape *Rooker-Feldman*'s jurisdictional bar by calling attention to its "narrow" scope;[34] while the doctrine is in fact narrow, this is one of those scenarios in which its narrow provisions apply.[35] Plaintiffs describe the *Rooker-Feldman* doctrine as, among other things, "smoke and mirrors," "judicial-gloss-gone-wild," "superfluous," and an "essentially dead doctrine."[36] In order to clear some of the smoke Plaintiffs created, this Court will briefly address why there is no way around *Rooker-Feldman*'s command that this case be dismissed for lack of subject matter jurisdiction.

---

[34] ECF 11, at 8.

[35] "No competent attorney would explicitly ask a lower federal court to review a state-court judgment." DONALD L. DOERNBERG ET AL., BLACK LETTER OUTLINE ON FEDERAL COURTS 178 (4th ed. 2017).

[36] ECF 11, at 8–9.

> 1. **The *Rooker-Feldman* doctrine is not precluded by allegations that a state court lacked subject matter jurisdiction over the prior action.**

Plaintiffs claim the Superior Court lacked subject matter jurisdiction over the 2012 Lawsuit for two reasons: (1) that GCB lacked standing to file the 2012 Lawsuit because the FDIC hadn't yet assigned the underlying loan documents,[37] and (2) that 12 U.S.C. § 1821(d)(13)(D) precluded the Superior Court from hearing the case.[38] Neither theory has any bearing on this case. The *Rooker-Feldman* doctrine is not precluded by a state court's purported lack of subject matter jurisdiction over a prior action. *May v. Morgan Cnty. of Ga.*, 878 F.3d 1001, 1007

---

[37] ECF 1, at ¶¶ 131–32. Even if this were factually correct—and judicially noticeable FDIC records demonstrate the contrary—the allegation raises a waivable "real-party-in-interest" standing issue, rather than a jurisdictional issue. *See, e.g., Rigdon v. Walker Sales & Serv., Inc.*, 161 Ga. App. 459, 461–62 (1982) ("Appellants finally contend that [the contract at issue] has been assigned to Ford Motor Credit Company. . . . Since appellants raised no real-party-in-interest objection in the trial court but asserted such an objection for the first time on appeal, we conclude that appellants have waived any objection they might have had on this ground.").

[38] ECF 1, at ¶¶ 78–80, 128–30. This allegation is baseless. Section 1821(d) provides administrative procedures for asserting claims ***against a failed bank*** in an FDIC receivership—it does not address collection lawsuits against borrowers. *See, e.g., Bobick v. Cmty. & S. Bank*, 321 Ga. App. 855, 861 (2013) (citing *Stamm v. Paul*, 121 F.3d 635, 639 (11th Cir. 1997) ("'In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities the [FDIC] would face numerous claims from various parties.' Consequently, Congress established limits on judicial review of such claims.").

(11th Cir. 2017) ("[Plaintiff] argues . . . *Rooker-Feldman* does not apply because the state court in the first civil case lacked subject matter jurisdiction. She asks us to recognize an exception to *Rooker-Feldman* on that basis. As of now, we have never adopted that exception.").

### 2. Georgia's civil practice statutes do not alter the application of the *Rooker-Feldman* doctrine.

Plaintiffs additionally claim that 28 U.S.C. § 1738 (the "Full Faith & Credit Act") commands this Court to consider the subject matter jurisdiction of the Superior Court in the 2012 Lawsuit.[39] To support this argument, Plaintiffs cite O.C.G.A. § 9-11-60(f), which states "a judgment void on its face may be attacked in any court by any person," and O.C.G.A. § 9-12-16, which states "[t]he judgment of a court having no jurisdiction of the person or subject matter of which is void for any other cause is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it."[40]

Plaintiffs rely on the phrase "any court" to include federal courts, but this Circuit has rejected that argument. *See, e.g., Rice v. Grubbs*, 158 F. App'x 163, 166 (11th Cir. 2005) ("[Plaintiffs] argue the district court ignored the mandate of

---

[39] ECF 11, at 9–11.

[40] *Id.* at 11.

O.C.G.A. § 9-11-60, which provides a void judgment may be attacked by any court, thereby requiring it to address the merits of their complaint. This section establishes a method for attacking Georgia state court judgments, but *only in* Georgia state courts. This is in accord with the *Rooker-Feldman* doctrine.") (citation omitted); *Kasbekar v. Ivy Station Cmty. Assoc., Inc.*, 2020 WL 11231840, at *3 (N.D. Ga. Sept. 8, 2020) ("Citing O.C.G.A. § 9-12-16, Plaintiffs additionally argue . . . Georgia law allows anyone whose rights are affected by a void judgment to attack it in any court at any time. However, as explained in the Court's Dismissal Order, that argument lacks merit because Georgia law does not determine jurisdiction in federal court."). Simply put, Georgia law cannot enlarge the jurisdiction of federal courts—the *Rooker-Feldman* doctrine remains the controlling legal principle on this issue.

### 3. Plaintiffs' Complaint is not a renewal complaint.

Plaintiffs' strategy to fashion this Complaint as a "renewal complaint" is nothing more than a thinly veiled attempt at pleading around the *Rooker-Feldman* doctrine. Plaintiffs contend this case is a renewal of the 2018 Lawsuit, but it is no such thing. Georgia's renewal statute, O.C.G.A. § 9-2-61(a), provides for the renewal of actions within six months of their dismissal:

> When any case has been commenced in either a state or federal court within the applicable statute of limitations

>and *the plaintiff* discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required. . . .

O.C.G.A. § 9-2-61(a) (emphasis added). The statute explicitly applies to cases dismissed by the plaintiff, not the court. *See Patterson v. Douglas Women's Ctr., P.C.*, 258 Ga. 803, 803 (1989) ("The 'privilege' of dismissal and renewal does not apply to cases decided on their merits."). In the 2018 Lawsuit, the Superior Court granted, on the merits, the defendants' motion to dismiss on seven of the eight claims brought by the plaintiffs.[41] The only claim for which the Superior Court did not grant dismissal was the plaintiffs' breach of contract claim, which they voluntarily dismissed.[42] The breach of contract claim was thus the only claim eligible for renewal—and Plaintiffs here did not bring such a claim.

The *Rooker-Feldman* bar on federal subject matter jurisdiction is not pierced by clever labels or inventive pleadings. The doctrine categorically precludes state-court losers from inviting a district court to review and reject a state court judgment. *See, e.g., Behr v. Campbell*, 8 F.4th 1206, 1211 (11th Cir. 2021) (quoting

---

41   ECF 7-4.

42   *Id.* at 9.

*May*, 878 F.3d at 1005) ("*Rooker-Feldman* also does not prioritize form over substance. It bars all appeals of state court judgments—whether the plaintiff admits to filing a direct appeal of the judgments or tries to call the appeal something else. . . . A 'state court loser cannot avoid *Rooker-Feldman*'s bar by cleverly cloaking her pleadings in the cloth of a different claim.'"). This Court sees through Plaintiffs' cloaking and declines their invitation to review the Superior Court's judgment.

## IV.    Conclusion

Because Plaintiffs are seeking to attack a state court judgment and because all additional claims are inextricably intertwined, this Court lacks jurisdiction to hear the claims under the *Rooker-Feldman* doctrine. Having chosen not to appeal in state court, Plaintiffs may not, effectively, appeal their adverse judgments here. For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction [ECF 7] is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED with prejudice**. Because the Court does not have jurisdiction over this case, Defendant's pending motion to dismiss for failure to state a claim [ECF 9] is **DENIED as moot**.

The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 14th day of August, 2023.

                                                    Steven D. Grimberg
                                    United States District Court Judge